UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

VILLAGE OF HOBART

    Appellant,

v.                                                Case No. 08-MC-59

TCGC, LLC, et al.,

    Appellees.

## DECISION AND ORDER

On November 12, 2008, the Bankruptcy Court ordered the confirmation of the Third Amended Plan of Liquidation of TCGC, LLC. Appellant, the Village of Hobart, objected to confirmation and now appeals. The Village sought a stay of the order pending appeal and / or expedited treatment of the appeal. The other parties did not oppose the Village's request, and at a hearing on November 24, I stayed the order of confirmation and indicated that the Court would give the matter expedited consideration upon the submission of the parties' briefs. I also indicated my preliminary inclination, based on the parties' previous appearance in this court on related matters, that the real estate covenants at issue in this appeal would not be triggered by a sale to the Oneida Tribe. Having read the parties' briefs, I am convinced that my initial impression was correct and that the bankruptcy court's decision is not erroneous. Accordingly, the order of confirmation will be affirmed.

The facts underlying this appeal were set forth in Case No. 08-C-608, and they need not be repeated here. For present purposes, it is enough to say that covenants on golf course land

benefitted the Village of Hobart by requiring the Village's consent if a sale of the property would result in the property being removed from the Village's tax rolls:

> Restriction on Transfer. Without the express written consent of the Village of Hobart, no owner of any interest in the Subject Real Estate ... shall transfer any interest in the Subject Real Estate to any individual, entity, ... organization, or sovereign nation, or during the period of ownership take any action the result of which would: (1) remove or eliminate the Subject Real Estate (or any part thereof) from the tax rolls of the Village of Hobart; (2) diminish or eliminate the payment of real estate taxes levied or assessed against the Subject Real Estate (or any part thereof) and / or (3) remove the Subject Real Estate (or any part thereof) from the zoning authority and / or jurisdiction of the Village of Hobart.

(Cisar Aff., Ex. A at 2.)

This clause, the Village asserts, entitles it to protection in the bankruptcy context. Specifically, the applicable plan, approved by the bankruptcy court, calls for the Debtor, TCGC, LLC, to sell the golf course property to the Oneida Tribe of Indians. This event, the Village claims, would have the effect of removing the property from the Village's tax rolls because the Tribe intends to have the parcel placed in federal trust. Thus, it objected to the Plan on the ground that the Village was not adequately protected. Specifically, it believes the sale to the Oneida would violate the restrictive covenant, and it will have no means to sue the Oneida to enforce the covenant after the sale if the Oneida do not waive sovereign immunity. Thus, the Village believes the bankruptcy court erred in not requiring the Oneida to grant a broad waiver of sovereign immunity. It further asserts that the court erred in concluding the Village was adequately protected by the Oneida's limited waiver of sovereign immunity as to zoning issues. Finally, the Village claims the court erred in interpreting what it believed was an ambiguous clause without hearing evidence from the parties. I will address these arguments below.

The principal objection driving this appeal is the bankruptcy court's failure to require the Tribe to waive its sovereign immunity with respect to the consent covenant set forth above. Without such a waiver, the Village asserts, it lacks adequate protection to enforce its covenant.

At the outset, I question whether any court has the authority to require a sovereign entity such as an Indian tribe to waive its sovereign immunity as a condition to purchasing property. The Village has not cited any authority for such a result. Even if I had that authority, however, a waiver of sovereign immunity would not be required to protect the Village because the covenant does not grant it a basis for that protection. More fundamentally, the fact is that a sale to the Tribe simply does not violate the alienability covenant.

The Village cites statements of Tribe members indicating the Tribe's intent to apply to have the land placed into trust. Although this fact is not even disputed, the Village spends a large portion of its briefs trying to establish the point, as though the Tribe's statements constitute some sort of smoking gun. The fact is that the Tribe can have all the intent in the world, but it still does not have the ability to "put" the land in trust by itself. As I suggested at the hearing, the Tribe merely intends to *apply* for trust status. The property will not be removed from the Village's tax rolls unless the Secretary of the Department of Interior approves the Tribe's application. 25 U.S.C. § 465. Thus, the Tribe does not have the unilateral ability to remove the property from the Village's tax rolls. The restrictive covenant is only triggered in the event a sale "would" remove the property from the tax rolls. It does not prohibit a sale that *could*, in combination with some later contingency, remove the property from the Village's tax rolls. Had the Village wanted such a broad property right, it could easily have drafted the covenant differently. In sum, I conclude the bankruptcy court was correct when it concluded that "[t]he proposed sale to the Purchaser will not remove or eliminate

3

the real estate subject to the Restrictive Covenants from the tax rolls of the Village of Hobart, nor will it diminish or eliminate the payment of real estate taxes and levies assessed against said real estate." (Cisar Aff., Ex. E at 6.)

Unfortunately, it seems that the unstated premise underlying the Village's argument is that the potential for it to suffer injury means there must be a remedy. If the transaction goes through, the Village fears it will not be able to sue the Tribe to enforce the covenant in the event the Tribe seeks to transfer the land to the United States in trust which it clearly indicated it intends to do. Therefore, it needs protection at this earlier stage before the Tribe gets its hands on the land. The Village's premise, of course, is not a sound one. Every day, countless business transactions occur that have adverse effects on third parties. A merger of two businesses could result in an early end to one of their leases, injuring a third-party landlord. Competitors can consolidate, resulting in the cancellation of a supplier's contract. None of these bystanders have any legal recourse merely because they are injured – if they have any rights, those rights are founded in contractual terms to which the parties have agreed. Similarly, the simple fact that the Village could suffer injury does not mean it is entitled to protection. The right to protection has to have some independent source, and of course the only source of such rights are the covenants benefitting the Village. Yet, as discussed above, those covenants do not provide the broad right the Village asserts. It seems clear enough that it intended to secure such a right for itself when the covenant was drafted, but the covenant was drafted more narrowly.

The Village also appeals the bankruptcy court's conclusion that the Tribe's limited waiver of immunity for zoning purposes was sufficient to protect the Village's interest. In addition to the restrictions on removing the property from the tax rolls (discussed above), the covenant provides

4

in Section 1(3) that no owner shall take any action that would "remove the Subject Real Estate (or any part thereof) from the zoning authority and / or jurisdiction of the Village of Hobart." (Cisar Aff., Ex. A.) The parties agreed that the transfer to the Oneida *would* trigger this clause (unlike the clause relating to taxes) because tribal ownership of the land (which is within the reservation's boundaries) would arguably remove the land from the Village's zoning authority. The covenant provides an "out," however: the Village's consent requirement is to be waived as to Section 1(3) "upon receipt of a legally enforceable consent agreement whereby the owner or proposed transferee agrees to be bound by the whereby the (sic) zoning authority and/or jurisdiction of the Village." (Cisar Aff., Ex. A at 4-5.)

To this end, the Oneida provided a limited waiver of sovereign immunity. It agreed to comply with and be subject to the Village's "zoning authority and zoning jurisdiction as set forth in duly adopted Village of Hobart zoning ordinances." (Cisar Aff., Ex. L.) It further agreed to waive its sovereign immunity with respect to enforcement of the agreement to comply with and be subject to the Village's zoning authority and zoning jurisdiction. (*Id.*)

The Village asserts that this waiver is not broad enough. In particular, the agreement waives immunity with respect to the Village's "zoning authority and zoning jurisdiction," but the covenant requires a waiver with respect to the Village's "zoning authority and / or jurisdiction." In other words, the Village believes that "zoning" modifies authority but not jurisdiction, and to that end it wants a broad waiver of immunity with respect to the Village's more general jurisdiction: "controls relating to liquor licensing, fire and explosive safety, building permits, sewer and water runoff, site

5

review, and the myriad of other ordinances and rules enforced by the Village." (Appellant Br. at 20.)

First, it seems clear that the adjective "zoning" modifies both authority and jurisdiction. It is, after all, in the context of a covenant pertaining to property. Requiring consent to the Village's zoning authority and zoning jurisdiction makes sense, but it is unclear why such a covenant would be designed to bring within its scope any other municipal matters the Village might wish to pursue against a purchaser of that property. As the Oneida note, the Village's reading of the clause would require a waiver to some general sort of jurisdiction over matters that have nothing whatsoever to do with the covenanted property.

The Village has cited cases in which the "or" has decoupled the modifier from the noun following the "or," but no case stands for the principle that that is always the case. In fact, the clause at issue requires a waiver with respect to "zoning authority *and / or* jurisdiction." The common reading of a phrase using an "and / or" would carry the zoning adjective forward to modify jurisdiction as well. *See, e.g., Ryder v. USAA General Indem. Co.,* 938 A.2d 4, 7-8 (Me. 2007) (noting "standard grammatical rule that when an adjective modifies the first of a series of nouns, a reader will expect the adjective to modify the rest of the series as well (i.e. "bodily injury, [bodily] sickness, or [bodily] disease"). *See also Lewis v. Jackson Energy Coop. Corp.,* 189 S.W.3d 87, 92 (Ky. 2005) ( "the first adjective in a series of nouns or phrases modifies each noun or phrase in the following series unless another adjective appears"). Clearly, the context is what matters, and here there is no reason to believe a restrictive covenant would require a sovereign entity to submit to anything other than the zoning jurisdiction of the Village. The bankruptcy court did not err in reaching that conclusion.

6

In sum, I find no basis for reversing the bankruptcy court. The covenants at issue here are either not triggered by the proposed sale or have been adequately resolved by the Tribe's waiver agreement. Accordingly, the order of the bankruptcy court is **AFFIRMED**.

Dated this 23rd day of December, 2008.

/s William C. Griesbach
William C. Griesbach
United States District Judge